IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CINDY L. ROMERO and CARLOS R. SANCHEZ,<br><br>    Plaintiffs,<br><br>v.<br><br>ALLSTATE,<br>D/B/A AND/OR A/K/A ALLSTATE INSURANCE CO., D/B/A AND/OR A/K/A ALLSTATE FIRE AND CASUALTY INSURANCE CO., D/B/A OR A/K/A ALLSTATE INSURANCE HOLDINGS, LLC, D/B/A AND/OR A/K/A ALLSTATE PROPERTY AND CASUALTY INSURANCE CO.,<br><br>    Defendant. | CIVIL ACTION<br>NO. 16-4037 |

## MEMORANDUM

**SCHMEHL, J.  /s/ JLS**                                                                    **March 7, 2016**

Plaintiffs in this action are a wife and husband. The wife was injured in a multi-car accident in which the driver at fault had let his insurance lapse. Plaintiffs allege that Defendant Allstate improperly refused to pay—or refused to pay the fair amount—on their uninsured/underinsured motorist policy. As a result, Plaintiffs filed suit (in Philadelphia County, removed to this Court by Defendant on the basis of diversity), bringing five claims: Count One, breach of contract; Count Two, statutory bad faith; Count Three, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL); Count Four, common law bad faith; and Count Five, loss of consortium on the part of the husband.

Defendant, maintaining that if Plaintiffs have a case it lies in the bad faith claims, filed both a motion to dismiss Count Three, the UTPCPL claim, and later a motion for judgment on the pleadings seeking dismissal of Counts One and Five, the breach and loss of consortium claims. The Court will grant both motions and dismiss Counts One, Three, and Five, as discussed below.

Motion to Dismiss the UTPCPL Claim

Defendant's primary argument for dismissal of the UTPCPL claim is that the statute covers claims relating to the initial purchase of goods or services, not to later problems in an ongoing contractual relationship. This argument is supported by case law:

> The insurance bad faith statute applies to post-contract formation conduct. The UTPCPL, on the other hand, applies to conduct surrounding the insurer's pre-formation conduct. The UTPCPL applies to the sale of an insurance policy. It does not apply to the handling of insurance claims. Rather, § 8371[, the bad faith statute,] provides the exclusive statutory remedy applicable to claims handling. Hence, an insured cannot bring an action under the UTPCPL based on the insurer's failure to pay a claim or to investigate a claim.

*Kelly v. Progressive Advanced Ins. Co.*, 159 F. Supp. 3d 562, 564–65 (E.D. Pa. 2016) (citations omitted); *see also Gibson v. Progressive Specialty Ins. Co.*, No. CIV.A. 15-1038, 2015 WL 2337294, at *4 (E.D. Pa. May 13, 2015) (noting that an action against an insurer under the UTPCPL "cannot be based on a failure to perform a contractual obligation, such as the failure to pay a claim or a failure to investigate pursuant to the contract"). The thrust of Plaintiffs' claims here involves the alleged refusal to pay on a

2

claim, which occurred long after the contract by which Plaintiffs purchased the insurance coverage was formed.[1]

Plaintiffs attempt to tie in pre-formation conduct by arguing that Defendant's marketing, particularly the slogan or slogans that assert one is in "good hands" with Allstate, induced Plaintiffs to purchase insurance from Defendant with a promise of fair dealing that the later claims handling proved false. Defendant argues this approach has already been rejected because the slogan is mere puffery and thus cannot constitute a misrepresentation or deceptive statement and cannot engender justifiable reliance. Defendant's position here is also supported by case law. *See Gidley v. Allstate Ins. Co.*, No. CIV. A. 09-3701, 2009 WL 4893567, at *4-*5 (E.D. Pa. Dec. 17, 2009); *see also Sicherman v. Nationwide Life Ins. Co.*, No. CIV.A. 11-7227, 2012 WL 1122737, at *4 (E.D. Pa. Apr. 4, 2012) (reaching the same conclusion with respect to Nationwide's slogan, "Nationwide is on your side"); *Rodio v. Smith*, 587 A.2d 621, 624 (N.J. 1991) (reaching the same conclusion as to the "good hands" slogan but under the New Jersey Consumer Fraud Act).[2]

The conduct Plaintiffs allege here is suited to a bad faith action, either under statute or the common law, and Defendant has not moved to dismiss those claims. The UTPCPL simply does not cover this case and the Court will dismiss Count Three.

---

[1] Even if conduct after the purchase and formation of the contract can be the subject of a UTPCPL claim, Plaintiffs have not sufficiently pled any misrepresentation on which they justifiably relied. Other than the slogan discussed below, the only misrepresentations Plaintiffs cite involve Defendant's alleged indications that they were working on investigating and assessing the claim and intended to make a settlement offer. Those representations are too vague to create any justifiable reliance, and it does not appear that Plaintiffs acted upon them in any way, let alone to their detriment. Perhaps they delayed filling suit, but despite reference in the complaint to the possibility that Defendant wanted Plaintiffs to miss the statute of limitations window, that obviously did not happen.

[2] Plaintiffs very briefly argue that the UTPCPL claim should survive because they can prove bad faith based on a violation of a statute, including the UTPCPL. *See Berg v. Nationwide Mut. Ins. Co.*, 44 A.3d 1164, 1175 (Pa. Super. Ct. 2012). But that does not enable a separate cause of action for a UTPCPL violation; the violation merely may constitute some evidence to support the bad faith cause of action.

Motion for Judgment on the Pleadings as to the Breach and Loss of Consortium Claims

Plaintiffs have brought claims for breach and loss of consortium based on Defendant's refusal or failure to pay them benefits under their uninsured motorist coverage. That is, the wife was injured by a driver who did not have proper coverage, so she sought coverage from Defendant, her own insurer, under her UM coverage, and Defendant did not pay. The husband was also a named insured and sought a payout under the same coverage for the loss of consortium he has suffered as a secondary consequence of the wife's injuries. Defendant argues these claims are now moot and should be dismissed because it has since offered to pay the full amount of the UM coverage, $50,000.

The bulk of argument in the briefing concerns the loss of consortium claim. Plaintiffs' brief is confusing and poorly written, with paragraphs that end mid-sentence and other barriers to a full understanding of their argument. Plaintiffs appear to argue as follows: while Defendant says that a loss of consortium claim cannot be brought along with a breach of contract claim, that is only correct if the spouse claiming loss of consortium is not a party to the contract, citing for the latter point *Rodgers v. Prudential Insurance Company of America*, 803 F. Supp. 1024, 1032 (M.D. Pa. 1992), *aff'd*, 998 F.2d 1004 (3d Cir. 1993). Unfortunately, as explained below, this argument first misstates Defendant's position and then attacks that misapprehended position with an incorrect understanding of the *Rodgers* holding. Ultimately, Defendant's true position is partially misaligned with the circumstances of the case as well, but dismissal of the loss of consortium claim is nevertheless appropriate.

Defendant does not argue, as Plaintiffs suggest, that "loss of consortium is not available in a breach of contract claim." Pl. Br. (Doc. #31) at 9. Defendant is not saying that a loss of consortium claim cannot exist alongside a breach claim; rather, Defendant argues you cannot have a loss of consortium claim based on a breach or other claim *if that breach or other claim itself fails*.[3] Plaintiffs' strenuous assertion that loss of consortium is only barred alongside a breach claim if the spouse is not a party to the contract, citing *Rodgers*, simply does not respond to Defendant's actual argument. And Plaintiff's representation of *Rodgers* is incorrect in any event. All that *Rodgers* says is that "recovery for loss of consortium is not available in a breach of contract claim if the spouse is not a party to the contract." *Rodgers*, 803 F. Supp. at 1032; *see also Murray v. Commercial Union Ins. Co. (Commercial)*, 782 F.2d 432, 438 (3d Cir. 1986). But the fact that a spouse who *is not* a party *cannot* recover for loss of consortium does not necessarily mean that a spouse who *is* a party *can* recover.

It is correct as Defendant notes that a loss of consortium claim is generally considered derivative of the injured spouse's claim, which even *Rodgers* acknowledges. *See Rodgers*, 803 F. Supp. at 1032 ("As a derivative claim, loss of consortium can be recovered by a wife only when the defendant is liable to her spouse."); *see also Murray*, 782 F.2d at 438 ("Further, to the extent Count III is viewed as a tort claim, Mrs. Murray's

---

[3] It would seem possible for a loss of consortium claim to be derivative of a breach claim in the normal way, if the breach itself is what caused the lost companionship. The plaintiffs in *Murray*, for instance, appear to have claimed that the defendant employer's breach of an employment agreement caused such disruption to the employee husband that his wife lost his companionship. *See* 782 F.2d at 437. The court nevertheless held, however, that the spouse could not recover derivative to a breach because the spouse is not a party to the contract. *See id.* at 438. Liability for damages that result from breach of contract must generally be restricted to damages suffered by parties to the contract. So it may be that there is no type of breach claim that can lead to liability for loss of consortium in the actual form of a loss of consortium cause of action, and if that is Defendant's argument, it may be correct, but it is not the best understanding of this case. As explained below, in this context, the cause of action is not properly a loss of consortium but a separate breach claim.

5

right to recover in tort is derivative to that of her husband. As defendants are not liable in tort to Mr. Murray, his wife's claims must also fall." (citations omitted)). Essentially, a defendant cannot be liable to a spouse for his loss of consortium caused by injuries to the other spouse if the defendant is not actually liable for those injuries.

But the idea that the loss of consortium is derivative is not really applicable when the directly injured spouse is not bringing a claim against a defendant for causing her injuries. In this case, the primary injured plaintiff, the wife, is suing her insurer for failing to pay UM benefits, but no one is suggesting the failure to pay caused the wife's injuries or the husband's loss of her companionship; since the husband is not claiming he was harmed by what Defendant did to his wife, his claim does not necessarily rise or fall on the basis of whether Defendant is liable for what it did to his wife. The loss of consortium claim is thus not "derivative" in the usual way.

The focus above on the fact that the husband was also a named party to the insurance contract reveals the real nature of this situation. In fact, the husband's claim is not properly styled as a loss of consortium—it is simply a separate breach claim. Rather than claiming Defendant injured his wife and her injuries diminished her companionship, he is claiming a third party harmed both his wife and in turn himself and that Defendant is obligated by an insurance contract to pay both of them for those losses. The nature of his *loss or damages* is a loss of consortium, but the nature of his *cause of action* is properly a breach based on failure to pay insurance proceeds to which he alleges he is entitled. The result of this corrected framing of the situation is that while the husband's claim is not derivative and does not fail simply because the wife's claim fails, it does fail *for the same reason*: the full contractual obligation, the policy limits, have been tendered.

6

The husband could indeed maintain a separate claim on the insurance payout for his separate loss, but the total amount of money both Plaintiffs could ever recover is the policy limit of $50,000, which Defendant has offered.[4]

This brings us back to Defendant's primary argument, namely that the breach of contract claim is now moot and should be dismissed because Defendant has tendered the full policy limits. Defendant's position is correct, and while some of the precedent they cite is non-precedential, it is persuasive and relies on valid precedent. In the non-precedential case, the Third Circuit held that a breach claim based on failure to pay insurance proceeds was moot where the insurer offered the policy limit after the District Court proceedings but before the appellate ruling. *See Kane v. U-Haul Int'l Inc.*, 218 F. App'x 163, 169 (3d Cir. 2007); *see also Watson v. Farmers Ins. Co.*, 23 F. Supp. 3d 1342, 1351 (N.D. Okla. 2014) ("The defendant's payment of policy limits renders plaintiff's breach of contract claim moot, because plaintiff cannot show that he has contract damages, and he is protected by his tort claim for bad faith."). *Kane* cited an earlier Third Circuit case, which said there is no case or controversy for the court to hear when an offer of complete relief dissolves a plaintiff's interest in a claim. *See Weiss v. Regal Collections*, 385 F.3d 337, 340 (3d Cir. 2004), *as amended* (Oct. 22, 2004) *abrogated by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016). As noted in the citation, *Weiss* has seen some negative treatment, but that disagreement arises in the context of offers of judgment, where, as the Supreme Court noted, a plaintiff is entitled to reject the terms of an offer even if they are very good. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 670, 193 L. Ed. 2d 571 (2016), *as revised* (Feb. 9, 2016). The

---

[4] If the wife's injuries were valued, for example, at only $30,000, and Defendant paid that amount, the wife would have no breach of contract claim, but the husband could claim some of the remaining $20,000 to compensate him for his loss of his wife's companionship and sue on that claim if Defendant did not pay.

7

reasoning of *Weiss* is sound with regard to an offer of insurance policy limits, where the offer is everything that could possibly be recovered and there is really nothing for the plaintiff to reject.

Aside from erroneously mixing the loss of consortium issues into the straight breach of contract issues, Plaintiffs appear to offer only a minor argument as to why the tender of policy limits does not extinguish the breach claim. Plaintiffs suggest that "[t]he Defendant cannot arbitrarily and capriciously determine who gets what under the breach of contract claim." Pl. Br. (Doc. #31) at 11. In other words, Plaintiffs argue that even if the $50,000 policy limits are the total possible recovery, they may bring their claims for breach based on the wife's injuries and the husband's loss of consortium to trial solely in order to determine the appropriate allocation of the $50,000 between those two types of loss. In practical terms, it is vanishingly difficult to perceive the point of careful proportional allocation in this case, where Plaintiffs are husband and wife, the total amount of money is small, and the value of the wife's direct injuries is so likely to swamp the value of the husband's loss. In any event, Defendant has offered to pay the $50,000 into court. *See* Def. Br. (Doc. #28) at n.7. That offer was not for the purposes of proportional allocation, but it can easily suit that need. The Court will order Defendant to pay the insurance proceeds into court, and if Plaintiffs for some reason insist, the Court can allocate those funds between the two Plaintiffs' claims, even holding a hearing if necessary. In any event, the tender of the policy limits extinguishes the Plaintiffs' breach claims (including the "loss of consortium" claim as explained at length), so those claims do not survive to trial.

An appropriate order follows.